JUDGE OETKEN

12 CIV 1453

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| Johnson Poku Okyere | § | |
|     Plaintiff | § | Case No.: _____ |
| v. | § | |
| Palisades Collection, LLC, | § | |
| Houslanger & Associates, PLLC, | § | |
| Todd Houslanger | | |
| Mel S. Harris And Associates, LLC | § | |
|     Defendants | § | |



## PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

Plaintiff, JOHNSON OKYERE brings suit against Defendants for their violations of the Fair Debt Collection Practices Act, 15 U.S.C. 1692, et seq., (the "FDCPA"), and in support would show as follows.

### A.   JURISDICTION AND VENUE

1.      The Court has federal question jurisdiction over the lawsuit because the action arises under the Fair Debt Collection Practices Act, 15 U.S.C. 1692, et seq., (FDCPA).  Jurisdiction of the Court arises under 28 U.S.C. § 1331 in that this dispute involves predominant issues of federal law, the FDCPA.  Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202. The Court has supplemental jurisdiction under 28 U.S.C. §1367 over Plaintiff's state law claims because said claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

2.      Venue in this District is proper because all or a substantial part of the events or omissions giving rise to the claims occurred in Bronx County, New York.

3.      Plaintiff is an individual who resides in Bronx County, New York.

4.      Defendant PALISADES COLLECTION, LLC is a limited liability company organized and existing under the laws of the State of Delaware.  Said Defendant engages in business in New York, and this suit arose out of said Defendant's business in New York.  Palisades Collection, LLC, may be served by and through its New York registered agent C T Corporation System, 111 Eighth Avenue, New York, New York, 10011.

5.      Defendant HOUSLANGER & ASSOCIATES, PLLC ("the PLLC") is a professional service limited liability company organized under the laws of the State of New York, with its principal place of business at 372 New York Avenue, Huntington, New York 11743.  It may be served by and through the New York Secretary of State, Department of State's office at One Commerce Plaza, 99 Washington Avenue, Albany, New York 12231.

6.      Defendant TODD HOUSLANGER is an individual who, on information and belief, is a resident of the State of New York.  Houslanger, an attorney, is the owner and operator of the PLLC. He may be served at his place of business Houslanger & Associates, PLLC, 372 New York Avenue, Huntington, New York 11743, or wherever he may be found.

7.      Defendant MEL S. HARRIS AND ASSOCIATES, LLC is a limited liability corporation organized under the laws of the State of New York, with its principal place of business at 5 Hanover Square, 8th Floor, New York, NY 10004.  It may be served by and through the New York Secretary of State, Department of State's office at One Commerce Plaza, 99 Washington Avenue, Albany, New York 12231.

8.      All conditions precedent necessary to maintain this action have been performed or have occurred.

2

## B.   STATEMENT OF FACTS

9.      Defendant Houslanger & Associates, PLLC ("the PLLC") is a debt collection law firm. Houslanger is a debt collector because it sends thousands of collection letters and files thousands of collection lawsuits as attorneys for plaintiffs seeking to collect alleged consumer debts.

10.     Defendant Todd Houslanger ("Houslanger"), an attorney, is the owner and operator of the PLLC, and signed the pleadings on behalf of the PLLC.

11.     Defendant Palisades Collection, LLC ("Palisades") purchases charged off consumer accounts and attempts to collect on them by sending thousands of collection letters and filing thousands of collections lawsuits.  Palisades is a "debt collector."

12.     On or about April 5, 2004, Palisades, through its attorney and agent Mel S. Harris & Associates, LLC ("Harris"), filed a state court collections lawsuit in Bronx County Civil Court, Palisades Collection, LLC, AAO Discover Card v. Johnson Poku Okyere, No. CV-044525-04/BX (Civ. Ct. April 5, 2004) ("the collections lawsuit").

13.     Harris never served Mr. Okyere.

14.     The affidavit of service in the collections lawsuit falsely stated that service was effectuated on March 24, 2004, by leaving a copy of the complaint with "DORIS AKUFFO – WIFE," who also confirmed that Mr. Okyere was not in the military. This is false. Mr. Okyere has no wife named "Doris," and knows no one with that name with that description.

15.     Based on the false affidavit of service submitted by Harris, the clerk in the collections lawsuit issued judgment against Mr. Okyere on August 16, 2004, for $3,954.03.

16.     On information and belief, it is the pattern and practice of Harris to file false affidavits of

3

service of process for the purpose of obtaining default judgments against consumers, a practice known as "sewer service."

17.     Indeed, Mel Harris is currently in the midst of a class action lawsuit alleging that it knowingly retained process servers that engaged in sewer service so that Mel Harris could obtain default judgments based on the false affidavits of service. That class action has survived a motion to dismiss.  <u>Sykes v. Mel Harris and Associates, LLC</u>, 757 F.Supp.2d 41 (S.D.N.Y. 2010).

18.     The purpose of Harris filing the false affidavit of service was to conceal from Plaintiff the existence of the collections lawsuit, and the subsequent issuance of the default judgment.

19.     On or about March 11, 2011, New York City Marshal Ronald Moses ("Marshal Moses") executed on the judgment and restrained Mr. Okyere's bank account.

20.     Prior to the date of the freezing of his bank account, Mr. Okyere did not know and could not reasonably have known either about the collections lawsuit or the judgment.  Mr. Okyere did not receive a copy of the summons and complaint via postal mail. He did not receive any correspondence indicating that a lawsuit was filed or a judgment was entered.  Indeed, when his account was frozen Mr. Okyere initially thought he was being garnished on a judgment in a different index number which was satisfied through a prior income execution, a belief he stated in his order to show cause.

21.     On April 25, 2011, Mr. Okyere filed a pro se order to show cause to vacate the default judgment and to return the wrongfully garnished funds.   Mr. Okyere stated by motion that he had not been served and his first notice of the legal action was by a restraining notice on his bank

account.  The order to show cause also requested that any enforcement of the judgment be stayed pending resolution of the motion.

22.     Civil Court Judge R. Franco signed the order to show cause the same day the application was made, April 25, 2011. The order set a hearing for May 5, 2011, and further stated that all proceedings for the enforcement of the judgment from Palisades, its agents and attorneys, and by the Marshal were **stayed** until the hearing.

23.     A copy of the order was mailed on or before April 28, 2011, to Harris and Marshal Moses as ordered by Judge Franco.

24.     On or about May 4, 2011, the Houslanger Defendants filed on behalf of Palisades an opposition to Mr. Okyere's motion to vacate the default judgment.

25.     Harris was still listed as the attorney of record for Palisades when the Houslanger Defendants filed the opposition to the order to show cause, and no consent to change attorneys had been filed with the court at that time.

26.     It was unknown and unknowable to Mr. Okyere who actually represented Palisades during this time.

27.     The Houslanger Defendants had possession of Judge Franco's order restraining no later than May 4, 2011, the date it filed the opposition to the order to show cause.

28.     On May 5, 2011, the court adjourned the hearing on the order to show cause to May 12, 2011.

29.     On or about May 11, 2011, Marshal Moses withdrew approximately $2,513.30 from Mr. Okyere's bank account.

30.     On May 12, 2011, Judge González ordered that "all restraints, levies, liens and executions issued by the plaintiff against defendant's bank accounts are lifted.  All monies, including fees in the possession of the plaintiff, City Marshal, or other Agent shall be returned to the defendant forth[with]."

31.     The matter was then adjourned again to June 14, 2011, "for conf[erence] [and] Tui interpreter" and on that date Judge Barbato adjourned the case for pre-trial conference to be scheduled on the "P[ar]t 11C" Trial Calendar of the Bronx County Civil Court.

32.     On June 14, 2011, Judge Ben R. Barbato ordered Palisades to serve discovery answers to Mr. Okyere within 45 days.  Palisades and its counsel(s) willfully ignored the order of the court.

33.     After the June 14, 2011 hearing, Mr. Okyere, sent a letter to Palisades through the Houslanger Defendants attaching the May 12, 2011 order reminding Defendants to return the money illegally restrained, and also cited Judge Barbato's reiteration of Judge González's order to return the restrained funds immediately.

34.     On August 31, 2011, an undated notice of "Consent to Change Attorney" was filed in the civil court. The notice states that Palisades consents to the Houslanger Defendants to be substituted for Harris as attorneys of record for Palisades.

35.     Until the filing of the notice of substitution, Harris remained attorney of record in the collections lawsuit, and was responsible for all actions in the case.  For example, as attorney of record, Harris was responsible for making sure it and its client Palisades complied with the April 25, 2011 order to show cause that all collection activities on the judgment cease; and the May 12, 2011 order reiterating that all collection activities cease and that all money be returned

6

"forth[with]."

36.    CPLR 321(b)(1) requires that the notice of consent to change attorney be mailed to all parties. Neither Harris nor Houslanger sent the notice of change of attorney to Mr. Okyere. There is no certificate of service on the notice of consent of change of attorney.

37.    The purpose for the CPLR 321(b)(1) requirement for notice to be sent to all parties is to afford protection to adverse parties by eliminating dispute and uncertainty as to which attorney is responsible for the case, which attorney notice should be sent to, and which attorney is to be held accountable for refusing to comply with the orders of the court. This protection is especially important when the adverse party is pro se and particularly susceptible to being confused and deceived.

38.    Harris and the Houslanger Defendants failed to comply with its statutory obligation to serve Mr. Okyere the notice of substitution of counsel to make it more difficult for Mr. Okyere to be able to obtain and enforce an order for the release of the hold and the return of the money; and to provide a shield of plausible deniability for failing to comply with the orders of the court for Palisades, its agents, and its attorneys to cease all collection attempts and to return the money. Certainly, that was the effect.

39.    Houslanger appeared at the court hearings, either personally or through an attorney representing the PLLC, and spoke with Mr. Okyere regarding the alleged debt. These conversations with Mr. Okyere were the Houslanger Defendant's initial communication with Mr. Okyere within the meaning of 15 U.S.C. 1692g(a), yet the Houslanger Defendants did not provide Mr. Okyere the notice required by that statutory provision within five days of the initial

7

communication (or at any point, for that matter).

40.     On information and belief, Marshal Moses forwarded the executed funds to Palisades, through either Harris or the Houslanger Defendants, after taking his own fee.

41.     On information and belief, Harris or the Houslanger Defendants forwarded some of those funds to Palisades, after taking their own fee.

42.     Incredibly, despite a court order and the passage of time **of more than 6 months** Defendants continued to refuse to comply with a direct order that they return Mr. Okyere's money "forth[with]."

43.     Mr. Okyere works in the kitchen of a nursing home. He does not make much money.  He is an immigrant from Ghana with limited education. Like many New Yorkers in these difficult financial times, Mr. Okyere lives paycheck-to-paycheck.  Defendants' freezing of his bank account, seizing and retaining of his money -- in violation of two court orders -- imposed severe financial hardship on Mr. Okyere.

44.     The Houslanger Defendants and Harris knew of the order for Palisades and its agents to cease collection activities and to return Mr. Okyere's money, but, on information and belief, withheld that knowledge from Palisades when they communicated account information to Palisades.

45.     In the alternative, also on information and belief, the Houslanger Defendant and/or Harris in fact informed Palisades of the court order cease collection activities to return the money to Mr. Okyere, but Palisades refused to return the money for more than six months after they were ordered to return the money "forth[with]."

Last printed 2/27/2012 2:13:00 PM

46.     In the third alternative, on information and belief, Harris and the Houslanger Defendants refused to inform Marshal Moses of the orders of the court to return the money "forth[with]," Marshal Moses had no knowledge of the order to return the money "forth[with]," and Marshal Moses retained the garnished funds for more than six months.

47.     In the fourth alternative, on information and belief, Harris and the Houslanger Defendants informed Marshal Moses of the orders of the court to return the money "forth[with]," or Marshal Moses knew of the orders from some other source, and yet Marshal Moses refused to comply with the order and retained the garnished funds for more than six months.

48.     The Houslanger Defendants and Harris had direct knowledge of the orders of the court.

49.     Palisades, as a party in the collections action, is charged with the knowledge of its attorneys and agents.

50.     In any case, the order to return the money applied to the Houslanger Defendants and Harris as the attorneys and agents of Palisades, and neither of them returned the money.

51.     The timing of the garnishment of Plaintiff's bank account came at a particularly precarious moment in his life. Plaintiff is from Ghana. His uncle, a close family member in Ghana, became gravely ill and passed away. Plaintiff desperately needed immediate access to the funds that Defendants seized in order to return to Ghana. He needed to bury his uncle. He needed to be with his family, to grieve together and to support one another. And of course, Plaintiff also needed this money to live, to pay for groceries and for rent. Defendants actions inflicted extreme emotional distress on Plaintiff that disrupted his activities of daily living. For long periods of time he experienced feeling of anger, helplessness, anxiety and frustration, which resulted in an

9

inability to sleep, constant headaches, and increased blood pressure.

## COUNT # 1: Violations of the federal Fair Debt Collection Practices Act.

52.     Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

53.     The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). See also Hamilton v. United Healthcare of La., Inc., 310 F.3d 385, 392 (5th Cir. 2002) ("Congress, through the FDCPA, has legislatively expressed a strong public policy disfavoring dishonest, abusive, and unfair consumer debt collection practices, and clearly intended the FDCPA to have a broad remedial scope").

54.     Congress designed the FDCPA to be enforced primarily through private parties – such as plaintiff – acting as "private attorneys general." See S. Rep. No. 382, 95th Con., 1st Sess. 5 (Aug. 2, 1977), ("The committee views this legislation as primarily self-enforcing; consumers who have been subject to debt collection abuses will be enforcing compliance"); and Jacobson v. Healthcare Fin. Servs., 516 F.3d 85, 91 (2d Cir. 2008) ("In this way, the FDCPA enlists the efforts of sophisticated consumers like [plaintiff] as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil  actions brought by others.")

55.     Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) because he was alleged to

owe a debt.

56.    The obligation alleged by Defendants to be owed by Plaintiff is a "debt" as defined by 15 U.S.C. § 1692a(5) because the putative credit card debt was incurred primarily for family, personal or household purposes.

57.    Defendants are each a "debt collector" as defined in 15 U.S.C. § 1692a(6).

58.    The PLLC and Harris are debt collectors because they send thousands of collection letters and file thousands of collection lawsuits as attorneys for plaintiffs seeking to collect alleged consumer debts.  Therefore the PLLC and Harris regularly attempt to collect debts alleged to be do to another, and that is their primary purpose.

59.    Houslanger is a debt collector because he regularly collects debts through the PLLC. Houslanger is the owner and operator of the PLLC. Houslanger signs the pleadings, discovery instruments, and collection letters for the PLLC.  On information and belief, Houslanger made the decisions to take the actions that form the basis of this complaint. On information and belief, Houslanger exercised control over the operation and management of the collection activities of the PLLC.

60.    Palisades is a debt collector because it purchases defaulted consumer accounts and attempts to collect on them by sending thousands of collection letters and filing thousands of collections lawsuits. Therefore Palisades regularly attempts to collect post-default consumer debts, directly or indirectly, and that is its primary purpose.

61.    The actions of Defendants enumerated in the above statement of facts constitute an attempt to collect a debt or were taken in connection with an attempt to collect a debt within the

meaning of the FDCPA.

62.    Defendant violated the following sections of the FDCPA: 15 U.S.C. §§ 1692d, 1692e, and 1692f.  By way of example and not limitation defendant violated the FDCPA by taking the following actions in an attempt to collect a debt or in connection with an attempt to collect a debt:  engaging in conduct the natural consequence of which is to harass, oppress or abuse any person; using false, deceptive or misleading representations or means; misrepresenting the character, amount or legal status of the debt; misrepresenting the services rendered or compensation which may be received; threatening to take and actually taking an action prohibited by law; communicating or threatening to communicate to any person false credit information; using any false representations or deceptive means; using unfair or unconscionable means; collecting any amount that is not expressly permitted by law or contract; taking or threatening to take any nonjudicial action to effect dispossession of property with no present right to do so; and, the Houslanger Defendants also violated 1692g by failing to provide the statutorily required notice within 5 days of its initial communication with Mr. Okyere. The Houslanger Defendants also failed to disclose in the initial oral communication that the debt collector is attempting to collect a debt and that any information will be used for that purpose.

63.    A prevailing Plaintiff in an FDCPA action is entitled to actual damages, additional statutory damages of up to $1,000.00, and mandatory attorney's fees and costs, and these are so sought.

## COUNT # 2: Tort of conversion

64.    Plaintiff repeats and realleges each and every allegation set forth above as if reasserted

Last printed 2/27/2012 2:13:00 PM

and realleged herein.

65.    Defendants intentionally and without authority, assumed and exercised control over Plaintiff's bank account and money, interfering with his right to possession of the same.

66.    Plaintiff gave notice of ownership and demanded return, and release of the account, which was by Defendants for an unreasonable period of time without qualification.

67.    For the reasons stated in the statement of facts, Defendants' conduct is gross, wanton or deliberate and demonstrates a high degree of moral culpability. Further Defendants conduct as alleged in the statement of facts demonstrate malice, insult, and/or willful or reckless disregard of Plaintiff's rights, or other aggravated acts by Defendants. For example, there were multiple orders of the court that all collection activity be ceased and yet Defendants willfully continued those collection activities. Defendants refused to comply with the direct orders of the court for the funds to be returned "forth[with]."

68.    For these reasons, Plaintiff is entitled to punitive damages, in addition to actual damages. Actual damages include loss of use of money for the period Defendants wrongfully exercised dominion and control over Plaintiff's bank account and money. Plaintiff suffered serious mental distress and disruption of his daily life.  The prospect of not being able to attend his uncle's funeral to spend the mourning period with his family caused him to experience headaches, feelings of increased blood pressure, and inability to sleep.

69.    Defendants' refusal to return the money Mr. Okyere very much needed to pay for basic essentials, including the cost of traveling to Ghana to attend his uncle's funeral caused him great

hardship and anguish.

70.     During the time that he discovered that almost $3,000 of his hard-earned money in his bank account was frozen by Defendants he suffered serious mental distress and disruption of his daily life.  The prospect of not being able to attend his uncle's funeral to spend the mourning period with his family caused him to experience headaches, feelings of increased blood pressure, and inability to sleep.

## C.     JURY DEMAND.

71.     Plaintiff demands a trial by jury.

## D.     PRAYER

72.     For these reasons, Plaintiff asks for judgment against Defendants for the following:

     i.     The above referenced relief requested;

     ii.    Statutory damages of up to $1,000.00 pursuant to 15 U.S.C. § 1692k;

    iii.    Actual damages within the jurisdictional limits of the court;

    iv.    Exemplary and punitive damages within the jurisdictional limits of the court;

     v.    Attorney fees and costs;

    vi.    Prejudgment and post-judgment interest as allowed by law;

    vii.   A declaration that defendants violated the FDCPA as alleged in the complaint;

   viii.   General relief;

ix.   All other relief, in law and in equity, both special and general, to which

Plaintiff may be justly entitled.

Dated: New York, NY
February 27, 2012

Respectfully submitted,

By: _____
Ahmad Keshavarz
ATTORNEY FOR PLAINTIFF
The Law Office of Ahmad Keshavarz
16 Court St., 26th Floor
Brooklyn, NY 11241-1026
Phone: (718) 522-7900
Fax:    (877) 496-7809
Email: ahmad@NewYorkConsumerAttorney.com


YISROEL SCHULMAN, ESQ.
NEW YORK LEGAL ASSISTANCE GROUP
Randal Jeffrey, Of Counsel
7 Hanover Square, 18th Floor
New York, New York 10004
Phone: (212) 613-5053
Email: RJeffrey@nylag.org


By: _____
Shanna Tallarico, of Counsel (ST0277)
ATTORNEY FOR PLAINTIFF
7 Hanover Square, 18th Floor
New York, New York 10004
Phone: (212) 613-5000 ext. 5155
Email: STallarico@nylag.org

15