UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
JOHNSON POKU OKYERE,                              :

                                                  :

                        Plaintiff,               :          OPINION AND ORDER

                                                  :

          -v.-

                                                  :          12 Civ. 1453 (GWG)

PALISADES COLLECTION, LLC et al.,                :

                        Defendants.              :
-----------------------------------------------------------------x

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

In this action, plaintiff Johnson Poku Okyere brings claims against defendants Todd

Houslanger, Houslanger and Associates, PLLC (collectively, the "Houslanger Defendants"), and

Palisades Collection, LLC ("Palisades") for violations of the Fair Debt Collection Practices Act,

15 U.S.C. § 1692 et seq. (the "FDCPA"), and conversion.  Okyere has also sued Ronald Moses,

a New York City Marshal, for conversion only.  Moses and the Houslanger Defendants have

moved to dismiss all claims against them under Fed. R. Civ. P. 12(b)(6) for failure to state a

claim.  Palisades has moved for judgment on the pleadings under Fed. R. Civ. P. 12(c).  For the

reasons stated below, these motions are granted, and the First Amended Complaint is dismissed

with prejudice as to the federal claims and without prejudice as to the state claims.

I.      BACKGROUND

We assume the allegations of the amended complaint to be true and summarize them

only to the extent necessary to dispose of the defendants' motions.

        A.      Factual Background

In 2004, Palisades filed a lawsuit against Okyere in Bronx County Civil Court seeking a

judgment on a debt owed to Discover Card, which had been assigned to Palisades.  See Summons and Complaint, dated Jan. 12, 2004 (annexed as Ex. A to Plaintiff's First Amended Complaint and Jury Demand, filed June 7, 2012 (Docket # 24) ("Compl." or "complaint")).  On May 17, 2004, a default judgment was entered against Okyere in the amount of $3954.03.  See Judgment on Default, dated May 17, 2004 (annexed as Ex. A to Compl.).  This judgment was procured based on a false affidavit of service.  Compl. ¶ 12.

Nearly seven years later, on March 30, 2011, Moses restrained Okyere's bank account in order to execute the judgment.  Id. ¶ 14; Computer Records of Marshal Moses related to Mr. Okyere, dated Nov. 17, 2011 (annexed as Ex. E to Compl.) ("Moses Records"), at 000062. Okyere believed the restraint related to a judgment with a different index number, which had been satisfied through a prior income execution.  Compl. ¶ 16.

On April 25, 2011, Okyere, acting pro se, filed an order to show cause to vacate the default judgment and return the restrained funds.  Id. ¶ 17; Order to Show Cause, dated Apr. 25, 2011 (annexed as Ex. C to Compl.).  Okyere stated that he had never been served and requested a stay of further enforcement of the judgment pending resolution of the motion.  Compl. ¶ 18. On April 25, 2011, the same day the motion was filed, Judge R. Franco signed the order to show cause and set a hearing date for May 5, 2011.  Id. ¶ 19; Order to Show Cause.  The order stated that all enforcement proceedings were "stayed" pending the hearing.  Id.  A copy of the order was mailed "on or before April 28, 2011" to both Moses and Mel S. Harris, the attorney who represented Palisades when the lawsuit was originally filed.  Id. ¶¶ 11, 20.  On April 29, 2011, Harris received the order to show cause, and on May 2, 2011, he contacted Palisades about representing it at the May 5 hearing.  Id. ¶¶ 21–23.  On May 3, 2011, Palisades informed Harris that it would arrange for a different attorney to represent it at the May 5 hearing.  Id. ¶ 24.

2

"On or before May 2, 2011," Moses received a copy of the order to show cause.  Id. ¶ 26; Moses Records at 000062.  On the same day, a "payout request/reminder" was sent from Moses's office to Okyere's bank.  Compl. ¶ 27; Moses Records at 000062.  On May 11, 2011, the bank issued a check in the amount of $2513.30 to Moses.  Compl. ¶ 28.  On May 16, 2011, Moses cashed the check and took out his own fee.  Id. ¶ 29.

In the meantime, on May 4, 2011, the Houslanger Defendants filed an opposition to the order to show cause, at the direction of Palisades.  Id. ¶ 32.  At this point, the Houslanger Defendants had possession of the order staying execution of the judgment.  Id. ¶ 33.  Because no notice of substitution of counsel was filed during this time period, Okyere did not know who actually represented Palisades.  Id. ¶¶ 35, 38.

On May 5, 2011, the court adjourned the hearing on the order to show cause until May 12, 2011.  Id. ¶ 39.  On May 12, 2011, Judge Lizbeth Gonzalez issued an order vacating the judgment against Okyere.  Id. ¶ 41; Decision/Order, dated May 12, 2011 (annexed as Ex. 1 to Plaintiff's Response in Opposition to Motion to Dismiss [DE 27 – 29] of Houslanger Defendants, filed July 13, 2012 (Docket # 39) ("Pl. Resp. to Houslanger Defs.' MTD")).[1]  The order stated, "all restraints, levies, liens and executions issued by the plaintiff against the defendant's bank accounts are lifted.  All monies, including fees, in the possession of the plaintiff, City Marshal [sic] or other agent, shall be returned to the defendant forth[with]."

---

[1] While Okyere did not attach the May 12, 2011 order to his complaint, he has attached it to his response in opposition to the Houslanger Defendants' motion to dismiss.  See Pl. Resp. to Houslanger Defs.' MTD at 9 n.4, n.5.  Also, the Complaint quotes from this order numerous times.  See Compl. ¶¶ 41, 43, 51, 52, 58, 59, 63, 88, 89.  Because this document is "integral to the complaint," and its authenticity has not been disputed, it may be considered on a motion to dismiss.  Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007) (quoting Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991), cert. denied, 503 U.S. 960 (1992)).

Compl. ¶ 41; Decision/Order.  At the May 12, 2012, hearing, Palisades was present "through the Houslanger Defendants," Compl. ¶ 43, yet "[n]one of Defendants complied with the order to return the money 'forth[with].'"  Id.

On May 13, 2011, Palisades and the Houslanger Defendants, "through Marshal Moses," took $2513.30 from Okyere's bank account, and Moses held $2371.78 in trust for Palisades and the Houslanger Defendants.  Id. ¶ 45; Moses Records at 000066.  On May 18, 2011, Palisades requested, through the Houslanger Defendants, that Moses continue to hold Okyere's money in trust for 60 additional days.  Compl. ¶ 48; Moses Records at 000063.  On June 14, 2011, Judge Barbato ordered Palisades to serve discovery on Okyere within 45 days, an order Palisades ignored.  Compl. ¶ 49.  Okyere then sent a letter to Palisades "via Houslanger Defendants," which attached a copy of the May 12, 2011 Order and reminded both Palisades and the Houslanger Defendants to return the money.  Id. ¶ 50.

On June 28, 2011, Moses asked the Houslanger Defendants about the status of Okyere's order to show cause.  Id. ¶ 51; Moses Records at 000063.  The Houslanger Defendants "declined to inform" Moses that the judgement against Okyere had been vacated "or affirmatively misrepresented to the Marshal the status of the court orders."  Compl. ¶ 51.  On July 18, 2011, the Houslanger Defendants again asked Moses to continue holding Okyere's funds in trust for another 60 days.  Id. ¶ 52; Moses Records at 000063.  On August 23, 2011, the Houslanger Defendants reiterated this request.  Compl. ¶ 53; Moses Records at 000063.  On August 31, 2011, a notice of "Consent to Change Attorney" was filed, in which Palisades consented to the substitution of the Houslanger Defendants for Harris as Palisades' attorney.  Compl. ¶ 54.  Okyere did not receive a copy of this notice.  Id. ¶ 55.  On September 16, 2011, the Houslanger Defendants again instructed Moses to hold Okyere's money in trust for 60 additional days.  Id.

¶ 58; Moses Records at 000063.  The Houslanger Defendants made the same request on November 15, 2011.  Compl. ¶ 59; Moses Records at 000063.  On November 17, 2011, Moses returned $2513.30 to Okyere.  Compl. ¶ 61; Moses Records at 000063–64.

B.    Procedural History

After Okyere filed his original complaint on February 27, 2012, he eventually filed an amended complaint, see Compl., which now governs.  On June 21, 2012, the Houslanger Defendants moved to dismiss the amended complaint.[2]  On July 9, 2012, Moses filed a motion to dismiss.[3]  Palisades filed an answer to the amended complaint and then moved for judgment on the pleadings.[4]  The defendants also filed a joint motion to stay discovery.[5]

_____

[2]  See Notice of Motion to Dismiss the First Amended Complaint, filed June 21, 2012 (Docket # 27); Memorandum of Law in Support of Houslanger & Associates, PLLC and Todd Houslanger's Motion to Dismiss, filed June 21, 2012 (Docket # 28) ("Houslanger Mem."); Declaration of Jay Shapiro in Support of Motion to Dismiss, filed June 21, 2012 (Docket # 29); Pl. Resp. to Houslanger Defs.' MTD; Reply Memorandum of Law in Response to Plaintiff's Opposition of Houslanger & Associates, PLLC and Todd Houslanger's Motion to Dismiss the First Amended Complaint, filed July 20, 2012 (Docket # 42) ("Houslanger Reply").

[3]  See Notice of Motion to Dismiss, filed July 9, 2012 (Docket # 35); Memorandum of Law in Support of Defendant Ronald Moses's Motion to Dismiss, filed July 9, 2012 (Docket # 36); Declaration of Stuart M. Riback in Support of Motion to Dismiss, filed July 9, 2012 (Docket # 37); Plaintiff's Response in Opposition to Motion to Dismiss [DE35 – 37] of Ronald Moses, filed July 23, 2012 (Docket # 43); Reply Memorandum of Law in Further Support of Defendant Ronald Moses's Motion to Dismiss, filed July 30, 2012 (Docket # 45).

[4]  See Notice of Motion, filed Aug. 30, 2012 (Docket # 53); Memorandum of Law in Support of Defendant's, Palisades Collection, LLC, Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to F.R.C.P. 12(c), filed Aug. 31, 2012 (Docket # 55); Declaration of Jonathan J. Greystone in Support of Motion to Dismiss, filed Aug. 31, 2012 (Docket # 56); Plaintiff's Response in Opposition to Palisades' Motion to Dismiss [DE 55 – 56], filed Sept. 21, 2012 (Docket # 63) ("Pl. Resp. to Palisades' MTD"); Reply Memorandum of Law in Response to Plaintiff's Opposition to Defendant's, Palisades Collection, LLC, Motion for Judgment on the Pleadings, filed Oct. 3, 2012 (Docket # 67) ("Palisades' Reply").

On October 9, 2012, Okyere filed a motion for leave to file a sur-reply, arguing that Palisades had raised an issue in its reply that had not been raised in its moving papers.  Plaintiff's

II.     GOVERNING LAW

     A.     Motions to Dismiss and Motions for Judgment on the Pleadings

     A party may move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) when the opposing

party's complaint "fail[s] to state a claim upon which relief can be granted."  While a court must

accept as true all of the allegations contained in a complaint, that principle does not apply to

legal conclusions.  See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 555 (2007) ("[A] plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do.") (citation, internal quotation marks, and brackets

omitted).  In other words, "[t]hreadbare recitals of the elements of a cause of action, supported

by mere conclusory statements, do not suffice," Iqbal, 556 U.S. at 678, and thus a court's first

task is to disregard any conclusory statements in a complaint, id. at 679.

     Next, a court must determine if the complaint contains "sufficient factual matter" which,

if accepted as true, states a claim that is "plausible on its face."  Id. at 1949 (citation and internal

---

Motion for Leave to File Sur-Reply to Issue Raised by Palisades for First Time in Motion for
Judgment on the Pleadings Reply [DE 57] Or, in the Alternative, Motion to Strike the Same,
filed Oct. 9, 2012 (Docket # 68).  Okyere included his argument on the merits of this issue in his
motion papers.  Id. at 5–7.  On October 24, 2012, this Court issued an order granting Palisades
leave to respond to the arguments Okyere made in his motion papers.  Order, dated Oct. 24, 2012
(Docket # 70).  Palisades filed a response on November 4, 2012.  Defendant's, Palisades
Collection, LLC, Memorandum of Law in Response to Plaintiff's Sur-Reply, filed Nov. 4, 2012
(Docket # 71) ("Palisades' Resp. to Sur-Reply").

    [5] Notice of Motion to Stay Discovery, filed Sept. 4, 2012 (Docket # 59); Joint
Memorandum of Law in Support of Defendants' Motion to Stay Further Discovery, filed Sept. 4,
2012 (Docket # 60); Declaration of Jay Shapiro in Support of Motion to Stay Further Discovery,
filed Sept. 4, 2012 (Docket # 61); Plaintiff's Response in Opposition to Defendants' Motion to
Stay Further Discovery [DE 60], filed Sept. 19, 2012 (Docket # 62); Reply Memorandum of Law
in Response to Plaintiff's Opposition Defendants' Motion to Stay Further Discovery, filed Sept.
28, 2012 (Docket # 66).

quotation marks omitted); accord Port Dock & Stone Corp. v. Oldcastle Ne., Inc., 507 F.3d 117, 121 (2d Cir. 2007) ("[A] complaint must allege facts that are not merely consistent with the conclusion that the defendant violated the law, but which actively and plausibly suggest that conclusion"). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citations and internal quotation marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a complaint is insufficient under Fed. R. Civ. P. 8(a) because it has merely "alleged" but not "'show[n]' . . . that the pleader is entitled to relief." Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

While a court typically examines only the allegations of a pleading on a motion to dismiss, "[d]ocuments that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered." Roth, 489 F.3d at 509.

The standard for analyzing a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is identical to the standard for a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). See, e.g., Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006).

B.    FDCPA Claims

The FDCPA "grants a private right of action to a consumer who receives a communication that violates the Act." Jacobson v. Healthcare Fin. Servs., Inc., 516 F.3d 85, 91 (2d Cir. 2008) (citing 15 U.S.C. § 1692k). The Second Circuit has summarized the purpose and history of the FDCPA as follows:

The purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).  The FDCPA "establishes certain rights for consumers whose debts are placed in the hands of professional debt collectors for collection, and requires that such debt collectors advise the consumers whose debts they seek to collect of specified rights."  DeSantis v. Computer Credit, Inc., 269 F.3d 159, 161 (2d Cir. 2001).  The legislative history of the passage of the FDCPA explains that the need for the FDCPA arose because of collection abuses such as use of "obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process."  S. Rep. No. 95-382, at 2 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1696.  The FDCPA sets forth examples of particular practices that debt collectors are forbidden to employ.  See 15 U.S.C. § 1692e. The list, however, is non-exhaustive, and the FDCPA generally forbids collectors from engaging in unfair, deceptive, or harassing behavior.  See 15 U.S.C. §§ 1692 et seq.

Kropelnicki v. Siegel, 290 F.3d 118, 127 (2d Cir. 2002).  The relevant provisions of the FDCPA apply only to the activities of a "debt collector."  See 15 U.S.C. §§ 1692e, 1692f, 1692g.  A "debt collector" is a person "who regularly collects . . . debts owed . . . another" or a person involved "in any business the principal purpose of which is the collection of any debts."  Id. § 1692a(6).

To establish a violation under the FDCPA

(1) the plaintiff must be a "consumer" who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, and (2) the defendant collecting the debt is considered a "debt collector," and (3) the defendant has engaged in any act or omission in violation of FDCPA requirements.

Schuh v. Druckman & Sinel, L.L.P., 751 F. Supp. 2d 542, 548 (S.D.N.Y. 2010) (quoting Healy v. Jzanus Ltd., 2002 WL 31654571, at *2 (E.D.N.Y. Nov. 20, 2002)).

Section 1692d specifically prohibits conduct "the natural consequence of which is to

harass, oppress or abuse any person in connection with the collection of a debt."  15 U.S.C. §
1692d.  This section contains a non-exhaustive list of behavior that violates this section,
including "the use or threat of use of violence," "the use of obscene or profane language," and
incessant telephone calls.  Id. § 1692d(1)–(6).  Abusive language under this statute includes
"'religious slurs, profanity, obscenity, calling the consumer a liar or a deadbeat, and the use of
racial or sexual epithets.'"  Chiverton v. Fed. Fin. Grp., Inc., 399 F. Supp. 2d 96, 101 (D. Conn.
2005) (quoting Federal Trade Commission, Staff Commentary on the Fair Debt Collection
Practices Act, 53 Fed. Reg. 50097, 50105 (1988)).

    Section 1692e prohibits the use of "false, deceptive, or misleading representation . . . in
connection with the collection of any debt."  15 U.S.C. § 1692e.  Under this section, courts
consider whether the misrepresentation would mislead "the least sophisticated consumer."  See
Easterling v. Collecto, Inc., 692 F.3d 229, 234 (2d Cir. 2012) (citing Clomon v. Jackson, 988
F.2d 1314, 1318 (2d Cir. 1993)).  Like section 1692d, section 1692e contains a non-exhaustive
list of conduct in violation of this section.  15 U.S.C. § 1692e.  These include, inter alia, the false
representation that the debt collector is affiliated with the United States government, the false
representation of the nature or amount of the debt, and the false representation that failure to pay
the debt will result in arrest, imprisonment, or seizure of property.  Id. §1692e(1)–(4).
Subsection 5 of section 1692e prohibits "[t]he threat to take any action that cannot legally be
taken or that is not intended to be taken."  Id. § 1692e(5).

III.    DISCUSSION

    Okyere's complaint contains a lengthy chronology of the facts he alleges.  But in the
portion of the complaint devoted to identifying the acts violating the FDCPA, Okyere's
complaint contains only the following conclusory language:

> [b]y way of example and not limitation defendant violated the FDCPA by taking
> the following actions in an attempt to collect a debt or in connection with an
> attempt to collect a debt: engaging in conduct the natural consequence of which is
> to harass, oppress or abuse any person; using false, deceptive or misleading
> representations or means; misrepresenting the character, amount or legal status of
> the debt; threatening to take and actually taking an action prohibited by law;
> communicating or threatening to communicate to any person false credit
> information; using any false representations or deceptive means; using unfair or
> unconscionable means; taking or threatening to take any nonjudicial action to
> effect dispossession of property with no present right to do so; and collecting any
> amount that is not expressly permitted by law or contract.

Compl. ¶ 77.  This language, however, is merely a recitation of behavior prohibited by various

sections of the FDCPA.  See 15 U.S.C. §§ 1692d–f.  The additional allegations contained in the

paragraphs describing Okyere's claim under the FDCPA do not cure this problem as they merely

explain why Palisades and the Houslanger Defendants meet the definition of "debt collector"

under the statute, why Okyere meets the definition of "consumer" under the statute, and why the

funds allegedly owed by Okyere to defendants meets the definition of "debt" under the statute.

Compl. ¶¶ 70–76.  This failure to provide more than the mere elements of a cause of action

constitutes exactly the "[t]hreadbare recitals" that the Supreme Court has found inadequate to

support a complaint.

Nonetheless, in his brief, Okyere makes clear the specific acts that he asserts constituted

violations of the FDCPA by Palisades and the Houslanger Defendants: (1) their "refusal to

comply with CPLR 321(b)(1)," the New York statute requiring that parties be informed of any

change of attorneys by other parties to a case, Pl. Resp. to Palisades' MTD at 28–34; Pl. Resp. to

Houslanger Defs.' MTD at 14–21, and (2) "by instructing the Marshal to retain the garnished

funds, and by retaining of Plaintiff's money," Pl. Resp. to Palisades' MTD at 22–27; Pl. Resp. to

Houslanger Defs.' MTD at 11–14.  We will therefore construe the complaint as alleging that

these acts constitute the basis for the FDCPA claim.

10

Before addressing these two alleged violations, we first address Palisades' argument that all claims against it must be dismissed because the complaint seeks to hold it vicariously liable for the Houslanger Defendants' actions. Palisades' Reply at 2–3; Palisades' Response to Sur-Reply at 6–9.

       A.    <u>Allegations Against Palisades</u>

As Palisades notes, the complaint makes no allegations that it took any action with respect to the violations alleged in the complaint other than engaging the Houslanger Defendants to represent it in court. <u>See</u> Palisades' Reply at 2. As a result, Palisades argues that it cannot be liable for the acts of the Houslanger Defendants. <u>Id.</u> at 2–3.

This argument is rejected. Case law has held that an entity that "itself meets the definition of 'debt collector' may be held vicariously liable for unlawful collection activities carried out by another on its behalf." <u>Pollice v. Nat'l Tax Funding, L.P.</u>, 225 F.3d 379, 404 (3d Cir. 2000). In <u>Pollice</u>, for example, a company called NFT, which was involved in purchasing delinquent claims from municipalities, entered into an agreement with another debt collection company, CARC, under which CARC would collect on claims for the benefit of NFT. 225 F.3d at 385–86. Similar to Okyere's complaint, the plaintiff's complaint in <u>Pollice</u> stated throughout that NFT committed certain violations of the FDCPA "through" CARC. <u>Id.</u> at 386–87, 393. The Third Circuit held that NFT "may be held vicariously liable for CARC's collection activity" because a debt collector subject to the FDCPA should "bear the burden of monitoring the activities of those it enlists to collect debts on its behalf." <u>Id.</u> at 405.

Indeed, cases have specifically noted that vicarious liability may attach in the context of an attorney-client relationship where both the attorney and its client constitute "debt collectors" under the FDCPA. <u>See</u> <u>Fox v. Citicorp Credit Servs., Inc.</u>, 15 F.3d 1507, 1516 (9th Cir. 1994).

11

In Fox, the Ninth Circuit held that a debt collection company could be held liable for its attorney's violation of the FDCPA's venue provision — even if the decision was made "solely by" its attorney.  Id. ("[W]e . . . conclude that Congress intended the actions of an attorney to be imputed to the client on whose behalf they are taken.").  Other cases have reached similar results.  See, e.g., Martsolf v. JBC Legal Grp., P.C., 2008 WL 275719, at *11 (M.D. Pa. Jan. 30, 2008) (debt collection company and its attorney "undisputedly maintain an attorney-client and agent-principal relationship for the purpose of collecting debts" and thus the debt collection company is "vicariously liable for FDCPA infractions that [its attorney] commits while acting on its behalf."); Oei v. N. Star Capital Acquisitions, LLC, 486 F. Supp. 2d 1089, 1094–96 (C.D. Cal. 2006) (citing cases) (stating that "courts routinely hold debt collectors vicariously liable under the FDCPA for the conduct of their attorneys in collecting debts on their behalf" and rejecting debt collection company's argument that it could not be held liable for its attorney's conduct because it was an independent contractor); accord Newman v. CheckRite Cal., Inc., 912 F. Supp. 1354, 1369–72 (E.D. Cal. 1995); Kimber v. Fed. Fin. Corp., 668 F. Supp. 1480, 1486 (M.D. Ala. 1987); cf. Caron v. Charles E. Maxwell, P.C., 48 F. Supp. 2d 932, 936–37 (D. Ariz. 1999) (no vicarious liability for attorney's actions where client was not a debt collection company).

We are aware that some courts have required plaintiffs to show that a debt collection company "exercise[d] control" over the activities of its attorney in order to be vicariously liable under the FDCPA.  See, e.g., Bodur v. Palisades Collection, LLC, 829 F. Supp. 2d 246, 258–59 (S.D.N.Y. 2011) (holding that "[w]ithout evidence that [debt collection company] exercised control over [attorney's] conduct generally or as to [plaintiff] specifically, [debt collection company] is not vicariously liable and therefore is entitled to summary judgment.") (citing Clark

v. Capital Credit & Collection Servs., Inc., 460 F.3d 1162, 1173 (9th Cir. 2006)); see also

Cassady v. Union Adjustment Co., 2008 WL 4773976, at *6 (N.D. Cal. 2008) (granting

summary judgment in favor of debt collection company where company showed it exercised no

control over attorney in debt collection actions).  In light of the case law just discussed, we

respectfully disagree with the imposition of a requirement that an FDCPA plaintiff show specific

acts of "control" when considering a debt collection company's liability for its attorney's

actions.  While some cases cited by Bodur and Cassady have required a showing of control over

the agent by the principal to find vicarious liability under the FDCPA, this requirement has been

imposed under different circumstances.  For example, some courts have required such a showing

in the situation where a party seeks to hold an attorney vicariously liable for the acts of his or her

client.  See, e.g., Clark, 460 F.3d at 1173 (attorney was not vicariously liable for the acts of his

client because the attorney did not exercise any control over the client); Herzlinger v. Nichler,

2011 WL 1434609, at *8–9 (S.D.N.Y. Feb. 9, 2011) (attorney was not vicariously liable for debt

collection company's acts when the two parties shared office space and attorney frequently did

collection work for company).  Other courts have required a showing of control over a process

server before holding a debt collection company liable for the process server's acts.  See, e.g.,

McNall v. Credit Bureau of Josephine Cnty., 689 F. Supp. 2d 1265, 1277–78 (D. Or. 2010)

(analyzing degree of control debt collection company exerted over process server); Byrd v. Law

Offices of John D. Clunk Co., LPA, 2010 WL 816932, at *7–8 (S.D. Ohio Mar. 8, 2010) (same).

We do not agree with a requirement that an FDCPA plaintiff show "control" because

claims that a principal is liable for an agent's actions normally do not require such allegations.

Rather, "traditional vicarious liability rules" ordinarily make principals liable for acts of their

13

agents merely when the agents act "in the scope of their authority." Meyer v. Holley, 537 U.S. 280, 285 (2003); accord Security. Pacific Mortg. & Real Estate Servs., Inc. v. Herald Ctr., Ltd., 891 F.2d 447, 448 (2d Cir. 1989) (it is an "established rule of agency law that a principal is liable to third parties for the acts of an agent operating within the scope of the agent's real or apparent authority") (per curiam) (citations omitted).  Here, the facts alleged in the complaint easily lead to the conclusion that the Houslanger Defendants were acting within their authority from Palisades.

        Moreover, the nature of an attorney-client relationship itself reflects that the client has the power to "control" its agent in material respects if the client wishes to do so.  See generally Martsolf, 2008 WL 275719, at *10–11 (existence of attorney-client relationship, in which debt collection company retained law firm and transmitted information to firm for the purposes of debt collection services, showed exercise of control sufficient to hold debt collection company vicariously liable for attorney's actions); Oei, 486 F. Supp. 2d at 1094–95 (not requiring explicit showing of control over attorney's actions to find vicarious liability); see also Kimber, 668 F. Supp. at 1486  (noting that without vicarious liability for an attorney's actions, a "debt collector could simply evade the [FDCPA] by hiring an attorney to do what it could not do itself"). Okyere has alleged that both Palisades and the Houslanger Defendants meet the definition of "debt collector" under the FDCPA, and that they maintained an attorney-client relationship.  See Compl. ¶¶ 8–10, 32, 54.  There is no suggestion that the Houslanger Defendants acted outside the scope of their authority.  Therefore, Palisades may be held vicariously liable for the actions of the Houslanger Defendants.

B.      The Failure to File a Notice of Substitution of Attorneys

Turning now to the specific violations alleged, Okyere argues that the defendants'

"refusal to comply with [N.Y.] CPLR 321(b)(1)" resulted in an FDCPA violation.  Pl. Resp. to

Houslanger Defs.' MTD at 14.  Okyere argues that the failure to file a substitution of counsel

made it "more difficult" for Okyere to enforce the stay or obtain his money and allowed

defendants to assert that they did not receive notice of court orders.  Id. at 16.

Case law is clear, however, that the failure to comply with a state law is not an automatic

violation of the FDCPA.  See James v. Merchs. & Prof'ls, Inc., 2010 WL 785803, at *2

(E.D.N.Y. Mar. 8, 2010) ("[T]he contention that every violation of state law raises a federal

claim under the FDCPA 'reflects a false, narrow, and overly mechanical reading' of the

statute.") (quoting Lindbergh v. Transworld Sys., Inc., 846 F. Supp. 175, 181 (D. Conn. 1994)).

Plaintiff's brief does nothing to explain why this particular violation fits within any of the

FDCPA provisions.  Perhaps Okyere would argue that there was some kind of "false"

representation as to the attorneys of record in this case.  15 U.S.C. § 1692e.  But the surrounding

circumstances alleged in the complaint make clear that this representation had no impact on the

actual harm that was allegedly caused to Okyere: the failure to return his money as required by a

court order.  To satisfy the FDCPA, the alleged act must at a minimum involve a

misrepresentation that is "material."  See, e.g., Sussman v. I.C. Sys., Inc., 2013 WL 842598, at

*8 (S.D.N.Y. Mar. 6, 2013) (citing cases); Walsh v. Law Offices of Howard Lee Schiff, P.C.,

2012 WL 4372251, at *3–5 (D. Conn. Sept. 24, 2012).[6]  That is, the statement must "influence a

_____

[6]  The Second Circuit has approved the materiality requirement in an unpublished
opinion:

Although "[i]t is clear that Congress painted with a broad brush in the FDCPA

consumer's decision or ability to pay or challenge a debt." Klein v. Solomon & Solomon, P. C.,

2011 WL 5354250, at *2 (D. Conn. Oct. 28, 2011).  Here, there is nothing in the complaint to

plausibly suggest that the failure to fulfill the state law notice-of-substitution requirement had

any material effect on Okyere's ability to challenge the debt or the process used to collect it.

Okyere had the ability to participate in the state court process regardless of the failure to file the

---

[,]" Pipiles v. Credit Bureau of Lockport, Inc., 886 F.2d 22, 27 (2d Cir. 1989), not
every technically false representation by a debt collector amounts to a violation of
the FDCPA.  Courts in this Circuit evaluate claims under the FDCPA according
to how the "least sophisticated consumer" would understand the communication.
See Ellis v. Solomon & Solomon, P.C ., 591 F.3d 130, 135 (2d Cir. 2010).  As a
result, "FDCPA protection 'does not extend to every bizarre or idiosyncratic
interpretation of a collection notice' and courts should apply the standard 'in a
manner that protects debt collectors against liability for unreasonable
misinterpretations . . . .'"  Easterling, 692 F.3d at 233–34 (quoting Clomon v.
Jackson, 988 F.2d 1314, 1319 (2d Cir. 1993)).  Additionally, several other circuit
courts, as well as a number of district courts in this Circuit, read a materiality
requirement into the FDCPA's prohibition of false, deceptive, or misleading
practices in the collection of a debt.  See, e.g., Warren v. Sessoms & Rogers,
P.A., 676 F.3d 365, 374 (4th Cir. 2012) (recognizing that "courts have generally
held that violations grounded in 'false representations' must rest on material
misrepresentations"); Donohue v. Quick Collect, Inc., 592 F.3d 1027, 1034 (9th
Cir. 2010) (finding that mislabeling in state complaint of interest owed on debt
was not a material misrepresentation under the FDCPA); Miller v. Javitch, Block
& Rathbone, 561 F.3d 588, 596 (6th Cir. 2009) (finding that state court complaint
which mischaracterized debtor's credit-card debt as a loan was not a materially
false or misleading statement under the FDCPA); Hahn v. Triumph P'ships LLC,
557 F.3d 755, 758 (7th Cir. 2009) (Easterbrook, C.J.) (holding that "a false but
nonmaterial statement is not actionable" under the FDCPA because "[a] statement
cannot mislead unless it is material"); Lane v. Fein, Such & Crane LLP, 767 F.
Supp. 2d 382, 389–90 (E.D.N.Y. 2011) (finding that misstatement in state
complaint was not materially false or misleading under FDCPA); Walsh v. Law
Offices of Howard Lee Schiff, P.C., No. 11 Civ. 1111, 2012 WL 4372251, at
*3–6 (D. Conn. Sept. 24, 2012) (adopting materiality requirement and dismissing
§ 1692e claims based on discovery disputes and alleged procedural misconduct in
state court action).

Gabriele v. Am. Home Mortg. Servicing, Inc.,  2012 WL 5908601, at *3 (2d Cir. 2012).

notice and, in any event, was obviously aware that the Houslanger Defendants were involved in the case because they filed materials with the Court starting on May 4, 2011. See Compl. ¶ 32; Affirmation in Opposition to Order to Show Cause, dated May 4, 2011 (annexed as Ex. A to Houslanger Mem.). Additionally, they appeared in court or made filings on various dates thereafter, see, e.g., Compl. ¶¶ 43, 48. Indeed, Okyere even alleges that he himself sent the Houslanger Defendants a letter in June 2011. Id. ¶ 50.

Because the requirement contained in N.Y. C.P.L.R. 321(b)(1) has no relation to debt collection activities, because Okyere does not allege any actual harm that was caused by defendants' failure to comply with the statute, and because Okyere had actual knowledge of the Houslanger Defendants' representation of Palisades, the Houslanger Defendants' alleged violation of N.Y. C.P.L.R. 321(b)(1) does not constitute a violation of the FDCPA.

C.     Taking and Keeping Okyere's Money Despite Okyere's Demand for Its Return

Okyere argues that Palisades and the Houslanger Defendants violated 1692e(5) when they instructed Moses to retain Okyere's money because they were under a court order to return the money and therefore "telling the Marshal to keep the money was taking an act prohibited by law." Pl. Resp. to Houslanger Defs.' MTD at 12. Section 1692e(5), however, does not encompass actions taken in violation of law. Instead, it prohibits a debt collector from making a "threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5) (emphasis added).

The Court is aware that a number of cases have concluded that the statute prohibits not only threats to take illegal action but also the illegal action itself. See, e.g., Bradshaw v. Hilco Receivables, LLC, 765 F. Supp. 2d 719, 730 (D. Md. 2011) (citing cases). But none of these cases suggest that the plain meaning of the statute prohibits anything other than threats. These

17

courts' conclusion that the plain meaning must be rejected is based on their view that Congress's chosen language would result in "futility," Sprinkle v. SB&C Ltd., 472 F. Supp. 2d 1235, 1247 (W.D. Wash. 2006), or their view that to construe the statute in accordance with its plain meaning would "defy the very purposes" of the statute, Marchant v. U.S. Collections W., Inc., 12 F. Supp. 2d 1001, 1006 (D. Ariz. 1998).[7]   But none of these cases advert to any accepted canon of statutory interpretation to reach this result and we do not think there is a warrant in case law simply to rewrite a statute based on a court's view as to its efficaciousness.  Perhaps the underlying reasoning is that Congress must have made a drafting error in limiting the statute to "threats" because there is no logical reason why it would have done so.  But Congress might have decided that actual violations of law would be protected by state tort law and processes whereas threats, which are often not prohibited as vigorously by state tort or statutory law, required special protection.

Accordingly, we join those courts that have construed the statute in accordance with its unambiguous language.  See, e.g., Delawder v. Platinum Fin. Servs. Corp., 443 F. Supp. 2d 942, 948 (S.D. Ohio 2005), appeal dismissed, 189 F. App'x 369 (6th Cir. 2006), cert. denied, 549 U.S. 1116 (2007); Wehrheim v. Seacrest, 2002 WL 31242783, at *4 (S.D. Ind. 2002); Clark v. Pollard, 2000 WL 1902183, *3 (S.D. Ind. 2000) ("By its plain language, subsection (5) applies to threats of action, not to actions actually taken.").  Because section 1692e(5) prohibits only threats, and because the complaint alleges an illegal act, not a threat, it does not come within section 1692e(5).

---

[7]  Notably, the case from which many of these courts derive support, Poirier v. Alco Collections, Inc., 107 F.3d 347, 350–51 (5th Cir. 1997), provides no explanation or legal reasoning at all as to why the statute should not be construed as written.

 Okyere also argues that instructing Moses to retain the funds violated 1692e in that the instruction was a "false, deceptive or misleading representation . . . in connection with the collection of any debt."  Pl. Resp. to Houslanger Defs.' MTD at 12.  See 15 U.S.C. § 1692e.  But Okyere has not pointed to any misrepresentations to Okyere — only a refusal to return his money.  To the extent that Okyere is alleging that the defendants made misrepresentations to others, any such claim must also be rejected.  For a misrepresentation to be actionable under the FDCPA, the false statement must be made to the debtor directly.  See Kropelnicki, 290 F.3d at 130; Boyd v. J.E. Robert Co., 2012 WL 4718823, at *7 (E.D.N.Y. Aug. 27, 2012); Schuh, 751 F. Supp. 2d at 548–50; see also O'Rourke v. Palisades, 635 F.3d 938, 943 (7th Cir. 2011) (stating that "the Act and its protections do not extend to third parties" and holding that misrepresentations to a judge in the debt collection process do not constitute a violation of 15 U.S.C. § 1692e), cert. denied, 132 S. Ct. 1141 (2012).

 Okyere separately argues that the defendants' withholding of his money violated section 1692d.  Pl. Resp. to Palisades' MTD at 27.  But the sole case cited in support of this proposition, Clark v. Capital Credit & Collection Services, Inc., 460 F.3d 1162 (9th Cir. 2006), held that section 1692d was violated where a debt collector "repeatedly call[ed] [plaintiff] to demand payment of" the debt.  Id. at 1178.  The examples given in the enumerated section of 1692d all consist of extra-judicial techniques of harassment designed to humiliate or annoy a debtor.  This is in keeping with the FDCPA's purpose of requiring debt collectors to treat debtors "in a reasonable or civil manner."  Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1178 (11th Cir. 1985) (quoting 123 Cong. Rec. 10241 (1977) (statement of chairperson of subcommittee that sponsored the legislation)); see also McDermott v. Marcus, Errico, Emmer & Brooks, P.C., 2012 WL 5878665, at *53 (D. Mass. Nov. 20, 2012) ("The non-exhaustive list of examples of oppressive

19

conduct in section 1692d concern tactics that have the natural tendency to embarrass, upset, or

frighten a debtor").[8]  Situations involving improper litigation conduct have been held to fall

outside section 1692d.  See, e.g., Popson v. Galloway, 2010 WL 2985945, at *5–6 (W.D. Pa.

July 27, 2010) (debt collector "proceeded with the [state court action] without documentation

detailing the purchases, payments, interest, and late charges, making it impossible for [p]laintiff

to determine whether or not he owed the alleged debt and if it was correctly calculated . . . .");

Chalik v. Westport Recovery Corp., 677 F. Supp. 2d 1322, 1329 (S.D. Fla. 2009) (filing sworn

statement denying claims of exemptions from garnishment without specific knowledge about

exemption); Hartman v. Asset Acceptance Corp., 467 F. Supp. 2d 769, 771, 777 (S.D. Ohio

2004) (attaching allegedly false statement to complaint that debt collection company was holder

in due course of bank account); Watkins v. Peterson Enters., Inc., 57 F. Supp. 2d 1102, 1108–09

(E.D. Wash. 1999) (serving multiple writs of garnishment).  Conversely, where courts have

found violations of 1692d, it has typically been in situations far different from what is alleged

here.  See, e.g., Kizer v. American Credit & Collection, 1990 WL 317475 (D. Conn. 1990)

(letter implying medical services would be withheld from plaintiff if he did not pay debt );

---

[8]  One Court has noted as follows:

Although the term "harass" is not defined in the FDCPA, the Act's legislative
history sheds light on what abusive practices violate § 1692d:

> [O]bscene or profane language, threats of violence, telephone calls at
> unreasonable hours, misrepresentation of a consumer's legal rights,
> disclosing a consumer's personal affairs to friends, neighbors, or an
> employer, obtaining information about a consumer through false pretense,
> impersonating public officials and attorneys, and simulating legal process.

S. Rep. No. 95–382, at 2.

Christy v. EOS CCA, 2012 WL 5944691, at *5 (E.D. Pa. Nov. 28, 2012).

20

Henderson v. Credit Bureau of Lockport, Inc., 1989 WL 78235, at *3 (W.D.N.Y. 1989) (writing "no more false promises" on notice sent to debtor comes within section 1962d because the "only function of [these] words was to vent [the debt collector's] frustration concerning a debtor's elusiveness, and to compel payment by harassment").  Plaintiff has not pointed to any decision suggesting that the statute's language prohibiting a debt collector from "harass[ing], oppress[ing] or abus[ing]" any person was intended to cover a failure to comply with a court order in litigation.

Because Okyere's allegations against Palisades and the Houslanger Defendants do not state a claim under the FDCPA, Okyere's FDCPA claims are dismissed.[9]

D.     State Law Conversion Claims

The only remaining claims are for conversion against Moses, Palisades, and the Houslanger Defendants.  Federal courts have "supplemental jurisdiction" over state law claims if they are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III."  28 U.S.C. § 1367(a).  Nonetheless, a district court should normally decline to exercise supplemental jurisdiction when "the district court has dismissed all claims over which it has original jurisdiction."  Id. § 1367(c)(3); accord United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966); In re Merrill Lynch Ltd. P'ships Litig., 154 F.3d 56, 61 (2d Cir. 1998); Lennon v. Miller, 66 F.3d 416, 426 (2d Cir. 1995).  Here, the FDCPA

---

[9] In a single paragraph, the complaint references section 1692f of the FDCPA.  See Compl. ¶ 77.  But Okyere's briefs opposing the motions to dismiss are devoid of argument or case law explaining why this section applies to his claims.  Accordingly, because Okyere has not pursued the question in his briefing, we have not considered the question of whether section 1692f applies.  If Okyere in fact wishes to advance arguments as to the applicability of this section, he has leave to file a memorandum of law on this question within 14 days of the issuance of this Opinion and Order.  If filed, briefing shall proceed in accordance with paragraph 2.B of this Court's Individual Practices.

claims provided the only basis for federal jurisdiction.  Thus, we decline to exercise

supplemental jurisdiction over Okyere's state law claims.

IV.     CONCLUSION

            For the foregoing reasons, the Houslanger Defendants' motion to dismiss (Docket # 27)

is granted, Ronald Moses's motion to dismiss (Docket # 35) is granted, and Palisades' motion

for judgment on the pleadings (Docket # 53) is granted.  The motion to stay discovery (Docket

# 59) is denied as moot.  The Court will stay the entry of judgment for 30 days, however, in the

event plaintiff supplies the additional briefing described in footnote 9.  Additionally, the Court

grants plaintiff leave to file an amended complaint, assuming he has a basis for doing so

consistent with this Opinion and Order and provided he does so within 30 days.  See Cortec

Indus., Inc., 949 F.2d at 48 ("It is the usual practice upon granting a motion to dismiss to allow

leave to replead.").

Dated:  March 22, 2013
        New York, New York

                                                    GABRIEL W. GORENSTEIN
                                                    United States Magistrate Judge