UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
JOHNSON POKU OKYERE,                          :

                                              :

                    Plaintiff,                :          OPINION AND ORDER

                                              :
          -v.-
                                              :          12 Civ. 1453 (GWG)

PALISADES COLLECTION, LLC et al.,             :

                    Defendants.               :
-----------------------------------------------------------------x
**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

        In this action, plaintiff Johnson Poku Okyere brings claims against defendants Todd

Houslanger, Houslanger and Associates, PLLC (collectively, the "Houslanger Defendants"), and

Palisades Collection, LLC ("Palisades") for violations of the Fair Debt Collection Practices Act,

15 U.S.C. § 1692 et seq. (the "FDCPA"), and conversion.  Okyere has also sued Ronald Moses,

a New York City Marshal, for conversion only.  All of Okyere's claims were dismissed in a

previous opinion of this Court, except that we granted Okyere leave to submit additional briefing

regarding his FDCPA claim under 15 U.S.C. § 1692f.  For the following reasons, we conclude

that the complaint states a claim for relief under section 1692f.  Accordingly, defendants' motion

to dismiss this claim is denied.  Because the resurrection of the section 1692f claim means there

is pendent jurisdiction over plaintiff's state law claims, we also consider defendants' arguments

that the conversion claims should be dismissed.  Having considered these arguments,

defendants' motions to dismiss the conversion claims are denied.

I.      BACKGROUND

We assume the allegations of the amended complaint to be true and summarize them only to the extent necessary to dispose of the remaining claims.

        A.      Factual Background

In 2004, Palisades filed a lawsuit against Okyere in Bronx County Civil Court seeking a judgment on a debt owed to Discover Card, which had been assigned to Palisades.  See Summons and Complaint, dated Jan. 12, 2004 (annexed as part of Ex. A to Plaintiff's 1st Amended Complaint and Jury Demand, filed June 7, 2012 (Docket # 24) ("Compl." or "complaint")).  On May 17, 2004, a default judgment was entered against Okyere in the amount of $3,954.03.  See Judgment on Default, dated May 17, 2004 (annexed as part of Ex. A to Compl.).  This judgment was procured based on a false affidavit of service.  Compl. ¶ 12.

Nearly seven years later, on March 11, 2011, Moses restrained Okyere's bank account in order to execute the judgment.  Id. ¶ 14; see also Computer Records of Marshal Moses, dated Nov. 17, 2011 (annexed as Ex. E to Compl.) ("Moses Records"), at 000062 (indicating that restraint occurred on March 30, 2011).  Okyere believed the restraint related to a judgment with a different index number, which had been satisfied through a prior income execution.  Compl. ¶ 16.

On April 25, 2011, Okyere, acting pro se, obtained an order to show cause to vacate the default judgment and return the restrained funds.  Id. ¶ 17; Order to Show Cause, dated Apr. 25, 2011 (annexed as Ex. C to Compl.) ("April 25 Order").  In his papers, Okyere stated that he had never been served and requested a stay of further enforcement of the judgment pending resolution of the motion.  Compl. ¶ 18.  The order to show cause set a hearing date for May 5, 2011.  Id. ¶ 19; April 25 Order.  The order stated that all enforcement proceedings were "stayed"

pending the hearing.  April 25 Order.  A copy of the order was mailed "on or before April 28, 2011" to both Moses and Mel S. Harris, the attorney who represented Palisades when the lawsuit was originally filed.  Id. ¶¶ 11, 20.  On April 29, 2011, Harris received the order to show cause, and on May 2, 2011, he sent a signed copy of the order to Palisades by email.  Id. ¶¶ 21–23.  On May 3, 2011, Palisades informed Harris that it would arrange for a different attorney to defend against the order to show cause at the May 5 hearing.  Id. ¶ 24.

"On or before May 2, 2011," Moses received a copy of the order to show cause.  Id. ¶ 26; Moses Records at 000062.  On the same day, a "payout request/reminder" was sent from Moses's office to Okyere's bank.  Compl. ¶ 27; Moses Records at 000062.

On May 4, 2011, the Houslanger Defendants filed an opposition to the order to show cause, at the direction of Palisades.  Compl. ¶ 32.  At this point, the Houslanger Defendants had possession of the order.  Id. ¶ 33.

On May 5, 2011, the court adjourned the hearing on the order to show cause until May 12, 2011.  Id. ¶ 39.  On May 11, 2011, the bank issued a check in the amount of $2,513.30 to Moses.  Id. ¶ 28.

On May 12, 2011, Judge Lizbeth Gonzalez issued an order vacating the judgment against Okyere.  Id. ¶ 41; Decision/Order, dated May 12, 2011 (annexed as Ex. 1 to Plaintiff's Response in Opposition to Motion to Dismiss [DE 27 – 29] of Houslanger Defendants, filed July 13, 2012 (Docket # 39) ("Pl. Resp. to Houslanger Defs.' MTD")).[1]  The order stated, "all restraints, levies,

_____

[1]  While Okyere did not attach the May 12, 2011 order to his complaint, he has attached it to his response in opposition to the Houslanger Defendants' motion to dismiss.  See Pl. Resp. to Houslanger Defs.' MTD at 9 n.4, n.5.  Also, the Complaint quotes from this order numerous times.  See Compl. ¶¶ 41, 43, 51, 52, 58, 59, 63, 88, 89.  Because this document is "integral to the complaint," and its authenticity has not been disputed, it may be considered on a motion to dismiss.  Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007) (emphasis omitted) (quoting Cortec

3

liens and executions issued by the plaintiff against the defendant's bank accounts are lifted.  All monies, including fees, in the possession of the plaintiff, City Marshall [sic] or other agent, shall be returned to the defendant forth[with]."  Decision/Order; Compl. ¶ 41.  At the May 12, 2012, hearing, Palisades was present "through the Houslanger Defendants."  Compl. ¶ 43.  "None of Defendants complied with the order to return the money 'forth[with].'"  Id. [2]

The complaint alleges that on May 13, 2011, Palisades and the Houslanger Defendants, "through Marshal Moses, took $2,513.30 from Mr. Okyere's bank account," and that as of this date Moses held $2371.78 in trust for Palisades and the Houslanger Defendants.  Id. ¶ 45; Moses Records at 000066.  Bank records reflect that on May 16, 2011, the check was sent by the bank.  Compl. ¶ 29; CitiDirect Check Image Delivery, dated May 16, 2011 (annexed as Ex. G to Compl.).  On May 18, 2011, Palisades, through the Houslanger Defendants, asked Moses to continue to hold Okyere's money in trust for 60 additional days.  Compl. ¶ 48; Moses Records at 000063.  On June 14, 2011, there was a hearing in Court, Compl. ¶ 49, and at some point "after" that hearing — and apparently before June 28, 2011, see id. ¶¶ 50–51 — Okyere sent a letter to Palisades "via Houslanger Defendants," which attached a copy of the May 12, 2011 Order and reminded both Palisades and the Houslanger Defendants to return the money, id. ¶ 50.

On June 28, 2011, Moses asked the Houslanger Defendants about the status of Okyere's order to show cause.  Id. ¶ 51; Moses Records at 000063.  The Houslanger Defendants "declined to inform" Moses that the judgement against Okyere had been vacated "or affirmatively

_____

Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991), cert. denied, 503 U.S. 960 (1992)).

[2] There is no allegation that Moses was specifically aware of the May 12 court order or the hearing.

4

misrepresented to the Marshal the status of the court orders." Compl. ¶ 51.  On July 18, 2011,

the Houslanger Defendants again asked Moses to continue holding Okyere's funds in trust for

another 60 days.  Id. ¶ 52; Moses Records at 000063.  On August 23, 2011, the Houslanger

Defendants reiterated this request.  Compl. ¶ 53; Moses Records at 000063.  On September 16,

2011, the Houslanger Defendants again instructed Moses to hold Okyere's money in trust for 60

additional days.  Id. ¶ 58; Moses Records at 000063.  The Houslanger Defendants made the same

request on November 15, 2011.  Compl. ¶ 59; Moses Records at 000063.  On November 17,

2011, Moses returned $2,513.30 to Okyere.  Compl. ¶ 61; Moses Records at 000063–64.

 B. Procedural History

  Okyere filed his original complaint on February 27, 2012, and later filed an amended

complaint, see Compl., which now governs.  After the defendants either moved to dismiss or for

judgment on the pleadings, this Court issued an Opinion and Order granting defendants'

motions.  Okyere v. Palisades Collection, L.L.C., 2013 WL 1173992, at *11 (S.D.N.Y. Mar. 22,

2013) ("Okyere I ").  However, we delayed entry of judgment, noting that Okyere's briefs

opposing the motions were devoid of argument or case law explaining why section 1692f of the

FDCPA applies to his claims.  Id. at *11 n.9.  We granted Okyere leave to brief this single issue.

Id.  Following this order, the parties submitted memoranda of law regarding this claim.[3]

---

 [3] See Plaintiff's Memorandum of Law as to Application of 15 U.S.C. § 1696f [sic] in
Opposition to Houslanger's Motion to Dismiss and Palisades' Motion for Judgment on the
Pleadings, filed Apr. 5, 2013 (Docket # 77) ("Pl. 1692f Brief"); Memorandum of Law in Support
of Houslanger & Associates, PLLC and Todd Houslanger's Reply to Plaintiff's Supplemental
Briefing in Opposition to Defendants' Motion to Dismiss the First Amended Complaint, filed
May 10, 2013 (Docket # 79) ("Houslanger 1692f Brief"); Supplemental Reply Memorandum of
Law in Further Support of Defendant Ronald Moses's Motion to Dismiss, filed May 10, 2013
(Docket # 80) ("Moses 1692f Brief"); Memorandum of Law in Support of Defendant's,
Palisades Collection, LLC, Reply to Plaintiff's Supplemental Briefing in Opposition to
Defendant's Motion to Dismiss the First Amended Complaint Pursuant to F.R.C.P. 12(c), filed

II.      GOVERNING LAW

     A.      Motions to Dismiss and Motions for Judgment on the Pleadings

A party may move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) when the opposing

party's complaint "fail[s] to state a claim upon which relief can be granted." While a court must

accept as true all of the allegations contained in a complaint, that principle does not apply to

legal conclusions. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly,

550 U.S. 544, 555 (2007) ("[A] plaintiff's obligation to provide the grounds of his entitlement to

relief requires more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do.") (citation, internal quotation marks, and brackets omitted). In other

words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice," Iqbal, 556 U.S. at 678, and thus a court's first task is to disregard any

conclusory statements in a complaint, id. at 679.

     Next, a court must determine if the complaint contains "sufficient factual matter" which,

if accepted as true, states a claim that is "plausible on its face." Id. at 678 (citation and internal

quotation marks omitted); accord Port Dock & Stone Corp. v. Oldcastle Ne., Inc., 507 F.3d 117,

---

May 10, 2013 (Docket # 81) ("Palisades 1692f Brief"); Plaintiff's Reply in Support of
Memorandum of Law as to Application of 15 U.S.C. § 1696f [sic] [DE 77], and in Opposition to
Houslanger's Motion to Dismiss and Palisades' Motion for Judgment on the Pleadings, filed
May 24, 2013 (Docket # 82).

     Okyere submitted an additional brief on August 1, 2013. Plaintiff's Supplemental
Authority as to Application of 15 U.S.C. § 1696(f) [sic] [DE 77], and in Opposition to
Houslanger's Motion to Dismiss and Palisades' Motion for Judgment on the Pleadings, filed
Aug. 1, 2013 (Docket # 84). Palisades and the Houslanger Defendants each responded to this
filing. Reply of Houslanger & Associates, PLLC and Todd Houslanger to Plaintiff's
Supplemental Briefing in Opposition to the Court's Dismissal of the Amended Complaint, filed
Aug. 5, 2013 (Docket # 85); Reply of Defendant, Palisades Collection, LLC, to Plaintiff's
Supplemental Briefing in Opposition to the Court's Dismissal of the Amended Complaint, filed
Aug. 12, 2013 (Docket # 86).

121 (2d Cir. 2007) ("[A] complaint must allege facts that are not merely consistent with the conclusion that the defendant violated the law, but which actively and plausibly suggest that conclusion").  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citations and internal quotation marks omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a complaint is insufficient under Fed. R. Civ. P. 8(a) because it has merely "alleged" but not "'show[n]' . . . that the pleader is entitled to relief."  Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

While a court typically examines only the allegations of a pleading on a motion to dismiss, "[d]ocuments that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered." Roth, 489 F.3d at 509.

The standard for analyzing a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is identical to the standard for a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). See, e.g., Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006).

B.    FDCPA Claims

The FDCPA "grants a private right of action to a consumer who receives a communication that violates the Act." Jacobson v. Healthcare Fin. Servs., Inc., 516 F.3d 85, 91 (2d Cir. 2008) (citing 15 U.S.C. § 1692k).  The Second Circuit has summarized the purpose and history of the FDCPA as follows:

The purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).  The FDCPA "establishes certain rights for consumers whose debts are placed in the hands of professional debt collectors for collection, and requires that such debt collectors advise the consumers whose debts they seek to collect of specified rights."  DeSantis v. Computer Credit, Inc., 269 F.3d 159, 161 (2d Cir. 2001).  The legislative history of the passage of the FDCPA explains that the need for the FDCPA arose because of collection abuses such as use of "obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process."  S. Rep. No. 95-382, at 2 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1696.  The FDCPA sets forth examples of particular practices that debt collectors are forbidden to employ.  See 15 U.S.C. § 1692e. The list, however, is non-exhaustive, and the FDCPA generally forbids collectors from engaging in unfair, deceptive, or harassing behavior.  See 15 U.S.C. §§ 1692 et seq.

Kropelnicki v. Siegel, 290 F.3d 118, 127 (2d Cir. 2002).  The relevant provisions of the FDCPA apply only to the activities of a "debt collector."  See 15 U.S.C. §§ 1692e, 1692f, 1692g.  A "debt collector" is a person "who regularly collects . . . debts owed . . . another" or a person involved "in any business the principal purpose of which is the collection of any debts."  Id. § 1692a(6).

To establish a violation under the FDCPA

(1) the plaintiff must be a "consumer" who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, and (2) the defendant collecting the debt is considered a "debt collector," and (3) the defendant has engaged in any act or omission in violation of FDCPA requirements.

Schuh v. Druckman & Sinel, L.L.P., 751 F. Supp. 2d 542, 548 (S.D.N.Y. 2010) (quoting Healy v. Jzanus Ltd., 2002 WL 31654571, at *2 (E.D.N.Y. Nov. 20, 2002)).

In its prefatory clause, section 1692f prohibits the use of "unfair or unconscionable

means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. That prefatory clause is followed by a list of specific conduct that constitutes a violation of this section, 15 U.S.C. § 1692f(1)–(8) — a list that the statute states is non-exhaustive, id. § 1692f ("Without limiting the general application of the foregoing, the following conduct is a violation of this section."). Thus, Section 1692f's prefatory clause — prohibiting "unfair or unconscionable conduct" — is a catchall provision that provides a cause of action "standing alone." Tsenes v. Trans-Cont'l Credit & Collection Corp., 892 F. Supp. 461, 465 (E.D.N.Y. 1995). Section 1692f as a whole "serves a backstop function, catching those unfair practices which somehow manage to slip by §§ 1692d & 1692e." Osborn v. Ekpsz, LLC, 821 F. Supp. 2d 859, 878 (S.D. Tex. 2011) (internal citations and quotation marks omitted); accord Rogers v. Capital One Servs., LLC, 447 F. App'x 246, 249 (2d Cir. 2011) (describing section 1692f as a "catchall provision").

III.    DISCUSSION

    A.    Section 1692f

    Palisades and the Houslanger defendants argue that Okyere's claim under section 1692f fails because to make out a claim under this section, a plaintiff must allege conduct different from conduct plaintiff has asserted violates the other sections of the FDCPA. See Houslanger 1692f Brief at 2–4; Palisades 1692f Brief at 3–5. In addition, they argue that his allegations do not fit within section 1692f anyway. Houslanger 1692f Brief at 4–6; Palisades 1692f Brief at 5–6. [4] We reject both of these arguments.

    In support of his 1692f claim, Okeyere points to the complaint's factual narrative,

---

    [4] In response, Okyere has opposed these arguments and, for the first time in his reply brief, argued that his allegations are covered specifically by 1692f(6)(A). Pl. 1692f Reply at 4–6. Because the argument was made for the first time in a reply brief, we do not reach it. See Estate of Ungar v. Palestinian Auth., 451 F. Supp. 2d 607, 610–11 (S.D.N.Y. 2006).

including its extensive allegations that the defendants ignored a court order to return Okeyere's money, e.g., Pl. 1692f Brief at 6.  This was the same factual narrative he used unsuccessfully to make out claims under sections 1692d and 1692e.  Okyere I, 2013 WL 1173992, at *1–3. Defendants argue that plaintiff's section 1692f claim must be dismissed for this reason alone because the complaint "does not identify any misconduct beyond what Plaintiff asserts violated other provisions of the FDCPA under 15 U.S.C. §1692d and §1692e."  Palisades 1692f Brief at 4; accord Houslanger 1692f Brief at 3.

Defendants have pointed to three cases suggesting that claims under section 1692f must be based on facts separate from those alleged under other sections of the FDCPA.   In two of these cases, Foti v. NCO Financial Systems, Inc., 424 F. Supp. 2d 643 (S.D.N.Y. 2006), and Tsenes, 892 F. Supp. 461, it appears that the claims the plaintiffs sought to bring under section 1692f had been found by the court to be viable under other sections.  Foti, 424 F. Supp. 2d at 667–70; Tsenes, 892 F. Supp. at 464–66.  Thus, it was unnecessary for the plaintiff in those cases to attempt to use the catchall provision of 1692f.  See also Sussman v. IC Sys., Inc., 2013 WL 842598, at *10 (S.D.N.Y. Mar. 6, 2013) (refusing to allow a 1692f claim where other provisions of the FDCPA were found to have covered conduct alleged in the complaint);  Moore v. Diversified Collection Servs., Inc., 2009 WL 1873654, at *4 (E.D.N.Y. June 29, 2009) (same). The cases cannot be read to mean — as defendants would have it — that where conduct fits within no other provision of the FDCPA, it cannot be actionable under the catchall provision of section 1692f.  To the contrary, Foti specifically recognizes that "§ 1692f may provide a cause of action for conduct that is not specifically listed in . . . any other provision of FDCPA."  424 F. Supp. 2d at 667.  Defendants' reading of section 1692f would render the catchall portion of section 1692f inoperative surplusage.

10

The third case cited by defendants, Osborn, 821 F. Supp. 2d 859, is of no help to them either because it explicitly states that a claim under section 1692f may "be based on conduct which falls outside of [the enumerated subsection of section 1692f] but which does not violate another provision of the FDCPA." Id. at 877–78 (quoting Winberry v. United Collection Bureau, Inc., 697 F. Supp. 2d 1279, 1292 (M.D. Ala. 2010)). That is precisely the situation here: the conduct alleged by plaintiff does not constitute a violation of any of the other sections of the FDCPA, such as section 1692d or 1692e, see Okyere I, 2013 WL 1173992, at *8–11, and has not been shown to come within any of the specific matters listed in the subsections of section 1692f. Thus, we conclude that Okeyere is entitled to proceed under section 1692f's catchall provision as long as he can show that the practices at issue were "unfair or "unconscionable."

Turning to this question, 1692f was enacted specifically "to catch conduct not otherwise covered by the FDCPA," because Congress was "[c]ognizant that it could not anticipate every improper practice used by debt collectors." Johnson v. BAC Home Loans Servicing, LP, 867 F. Supp. 2d 766, 781–82 (E.D.N.C. 2011) (citing S. Rep. No. 95-382, at 4 (Aug. 2, 1977), 1977 U.S.C.C.A.N. 1695, 1698), reconsideration denied, 2012 WL 148688 (E.D.N.C. Jan. 18, 2012); accord Hoover v. Monarch Recovery Mgmt., Inc., 888 F. Supp. 2d 589, 601 (E.D. Pa. 2012) ("§ 1692f operates as a catchall for conduct that is recognizably unfair, but not explicitly enumerated in other sections of the FDCPA") (internal citations omitted); Osborn, 821 F. Supp. 2d at 878 (internal citation and quotation marks omitted) (specifically acknowledging section 1692f's role in providing a cause of action for "those unfair practices which somehow manage to slip by §§ 1692d & 1692e").

Courts analyzing claims under 1692f have acknowledged that "[t]he phrase 'unfair or unconscionable' is as vague as they come." Beler v. Blatt, Hasenmiller, Leibsker & Moore,

LLC, 480 F.3d 470, 474 (7th Cir. 2007); accord LeBlanc v. Unifund CCR Partners, 601 F.3d

1185, 1200 (11th Cir. 2010).  In interpreting this phrase, the Eleventh Circuit has noted:

> The plain meaning of "unfair" is "marked by injustice, partiality, or deception."
> Significantly, in Jeter, we noted in dictum that in the FTC context, "[a]n act or
> practice is deceptive or unfair . . . if it has the tendency or capacity to deceive."
> Jeter [v. Credit Bureau Inc., 760 F.2d 1168, 1172 (11th Cir. 1985)].  The term
> "unconscionable" means "having no conscience"; "unscrupulous"; "showing no
> regard for conscience"; "affronting the sense of justice, decency, or
> reasonableness."  BLACK'S LAW DICTIONARY 1526 (7th ed. 1999).

LeBlanc, 601 F.3d at 1200.  The Court finds LeBlanc's discussion helpful in framing the

analysis of section 1692f.

Under the facts alleged here, the Court believes that a jury might reasonably conclude

that (1) removing money from a bank account when a court has forbidden this to occur and (2)

deliberately refusing for many months to return money seized from a bank account where a court

has ordered it returned "forthwith" constitute acts that affront the sense of "justice, decency or

reasonableness."  Indeed, courts have applied 1692f to conduct similar to what defendants did

here:  for example, filing an application for a writ of garnishment when the plaintiff did not owe

any money, Fox v. Citicorp Credit Servs., Inc., 15 F.3d 1507, 1517 (9th Cir. 1994); garnishing a

bank account with the knowledge that it contained exempt funds, Bray v. Cadle Co., 2010 WL

4053794, at *15 (S.D. Tex. 2010); Hogue v. Palisades Collection, LLC, 494 F. Supp. 2d 1043,

1051 (S.D. Iowa 2007); Todd v. Weltman, Weinberg & Reis, Co., L.P.A., 348 F. Supp. 2d 903,

915 (S.D. Ohio 2004), aff'd, 434 F.3d 432 (6th Cir.), cert. denied, 549 U.S. 886 (2006); and

drawing money from a consumer's bank account without authorization, Lovelace v. Stephens &

Michaels Assocs., Inc., 2007 WL 3333019, at *4–5 (E.D. Mich. 2007).

Defendants challenge Okyere's reliance on Polanco v. NCO Portfolio Management, Inc.,

2013 WL 1104170 (S.D.N.Y. Mar. 18, 2013), to support his argument.  Houslanger 1692f Brief

12

at 4–5; Palisades 1692f Brief at 5–6.  In Polanco, an attorney for a debt collection company filed a default judgment against plaintiff based on a falsified affidavit of service.  A New York City marshal executed the judgment and the attorney forwarded the funds to the debt collection company.  The plaintiff then filed an order to show cause to vacate the judgment and return her funds.  After defendants failed to return the money, plaintiff obtained a second order to show cause in her favor.  The defendants returned plaintiff's money nearly ten months after the first court order.  Id. at *1.  Polanco held that "fraudulently using the court's power to secure a default judgment and subsequent garnishment and then refusing to obey promptly that same Court's Orders falls within the FDCPA's broad purpose to protect consumers from such alleged abusive and unfair tactics" and allowed plaintiff's 1692f claim to proceed.  Id. at *4.

The Houslanger defendants point out that there are some differences between Polanco and this case inasmuch as the Houslanger defendants were not involved in the original collection action and, in their view, are alleged to have disobeyed one court order rather than two. Houslanger 1692f Brief at 4–5.  As Palisades notes, Okyere did not include allegations to support his assertion that there had originally been a falsified affidavit to obtain a default judgment, Okyere's funds were never forwarded to Palisades by its counsel or the New York City marshal, and Palisades was never found to be in violation of court orders.  Palisades 1692f Brief at 5–6.  But all of these arguments are of no moment.  Even if the conduct in Polanco was worse than what occurred here, Polanco does not purport to describe the outer limits of section 1692f's reach.

Finally, Palisades argues that the FDCPA "was not intended to cover a failure to comply with a Court Order in litigation," Palisades 1692f Br. at 6, citing to Okyere I in support.  But in Okeyere I, we held only that the failures to comply with a court order did not come within the

language of section 1692e(5) and section 1692d.  2013 WL 1173992, at *9, *10.  We did not

address whether disobeyance of a court order could in some instances form the basis for a

violation of section 1692f.  While the Second Circuit has held that the FDCPA is not implicated

"when a debtor is instead protected by the court system and its officers," Simmons v. Roundup

Funding, LLC, 622 F.3d 93, 96 (2d Cir. 2010), it has also recognized that "actions taken in

furtherance of a legal action are not, in and of themselves, exempt from liability under the

FDCPA,"  Gabriele v. Am. Home Mortg. Servicing, Inc., 503 F. App'x 89, 95 (2d Cir. Nov. 27,

2012).  Notably, in Simmons, the challenged conduct was the filing of an allegedly inflated

proof of claim in Bankruptcy Court for which a process exists to challenge such a claim.  Id. at

94, 96.  Here, by contrast, Okyere used the Court process to no avail, with the result that he was

deprived of a significant amount of money for many months in violation of two court orders.  In

light of these circumstances, we believe the conduct as alleged could be deemed to be "unfair" or

"unconscionable" under section 1692f.

     B.    <u>State Law Claim of Conversion</u>

     Because Okyere's federal claim is proceeding before this Court, we now consider his

state law claim for conversion in light of the defendants' motions to dismiss this claim.[5]

---

[5]  Notice of Motion to Dismiss the First Amended Complaint, filed June 21, 2012
(Docket # 27); Memorandum of Law in Support of Houslanger & Associates, PLLC and Todd
Houslanger's Motion to Dismiss the First Amended Complaint, filed June 21, 2012 (Docket #
28) ("Houslanger Mem."); Declaration of Jay Shapiro in Support of Motion to Dismiss, filed
June 21, 2012 (Docket # 29); Plaintiff's Response in Opposition to Motion to Dismiss [DE 27 –
29] of Houslanger Defendants, filed July 13, 2012 (Docket # 39) ("Pl. Resp. to Houslanger
Defs.' MTD"); Reply Memorandum of Law in Response to Plaintiff's Opposition of Houslanger
& Associates, PLLC and Todd Houslanger's Motion to Dismiss the First Amended Complaint,
filed July 20, 2012 (Docket # 42) ("Houslanger Reply"); Notice of Motion to Dismiss, filed July
9, 2012 (Docket # 35); Memorandum of Law in Support of Defendant Ronald Moses's Motion
to Dismiss, filed July 9, 2012 (Docket # 36); Declaration of Stuart M. Riback in Support of
Motion to Dismiss, filed July 9, 2012 (Docket # 37); Plaintiff's Response in Opposition to

1.      Okyere's Claim for Conversion Against Moses

Moses moves to dismiss the conversion claim against him for several reasons: (1) he is

immune from suit because of his position as a city marshal; (2) Okyere suffered no injury as a

result of Moses's alleged acts; and (3) the complaint fails to state a claim for relief.  Moses

Mem. at 6–15; Moses Reply at 3–5; Moses. Supp. Mem. at 1–2.

Moses argues that he cannot be liable under New York law for "discretionary actions

taken during the performance of governmental functions."  Moses Mem. at 7 (citing Valdez v.

City of N.Y., 18 N.Y.3d 69, 76 (2011)).  But he cites no authority for the proposition that a

governmental officer is vested with discretion to intentionally disobey a court order.  Certainly,

it is true that where a marshal acts in accordance with a lawful court order, he cannot be held

liable for any injuries suffered as a result of the execution of such order.  Treiber v. Mouriocourt,

258 N.Y.S. 206, 207 (N.Y. City Ct. 1932) ("It is well-settled law in this state that where a sheriff

or a marshal acts in obedience to the mandate of the court he is not personally responsible, nor is

the party at whose instance the mandate was issued responsible for his acts."); accord

Maldonado v. N.Y. Cnty. Sheriff, 2006 WL 2588911, at *5 (S.D.N.Y. 2006).  However, if a city

---

Motion to Dismiss [DE35 – 37] of Ronald Moses, filed July 23, 2012 (Docket # 43); Reply
Memorandum of Law in Further Support of Defendant Ronald Moses's Motion to Dismiss, filed
July 30, 2012 (Docket # 45); Notice of Motion, filed Aug. 30, 2012 (Docket # 53);
Memorandum of Law in Support of Defendant's, Palisades Collection, LLC, Motion to Dismiss
Plaintiff's First Amended Complaint Pursuant to F.R.C.P. 12(c), filed Aug. 31, 2012 (Docket #
55); Declaration of Jonathan J. Greystone in Support of Motion to Dismiss, filed Aug. 31, 2012
(Docket # 56); Plaintiff's Response in Opposition to Palisades' Motion to Dismiss [DE 55 – 56],
filed Sept. 21, 2012 (Docket # 63) ("Pl. Resp. to Palisades' MTD"); Declaration in Opposition to
Palisades' Motion to Dismiss, filed Sept. 21, 2012 (Docket # 64); Reply Memorandum of Law in
Response to Plaintiff's Opposition to Defendant's, Palisades Collection, LLC, Motion for
Judgment on the Pleadings, filed Oct. 3, 2012 (Docket # 67) ("Palisades' Reply"); Moses 1692f
Brief.

marshal acts outside the scope of a court order, he "acts at his own peril.  Innocent mistake will not exculpate him, nor erroneous direction."  <u>Schneider v. Sachs Quality Stores, Inc.</u>, 197 N.Y.S.2d 894, 897 (N.Y. Sup. 1960).  None of the cases cited by Moses, Moses Mem. at 6–9, contradict this, as they simply provide a broad discussion of governmental immunity unrelated to the facts in this case.

Here, Okyere alleges that "[o]n or before May 2, 2011, Marshal Moses received a copy of the Judge's order to show cause . . . .  <u>After</u> receiving the order to show cause, Marshal Moses contacted Mr. Okyere's bank to request a payout."  Compl. ¶¶ 26–27.  For the purposes of resolving a motion to dismiss, this allegation is sufficient to show that Moses acted outside the scope of a court order, and thus is not immune from suit.  While Moses argues that "[n]o facts have been pleaded to defeat Marshal Moses's qualified immunity," Moses Mem. at 14–15, this is incorrect in light of Okyere's allegations within the complaint regarding Moses's receipt of the court's order and direct violation of it.

Next, Moses argues that Okyere's conversion claim against him must fail because Okyere has not suffered any injury.  Moses Mem. at 10–11.  Specifically, Moses asserts that under N.Y. C.P.L.R. § 5222(b), a restraining notice lasts a year; the account was restrained on March 11, 2011; and therefore Okyere would have been unable to access the money for a year following the March restraining notice regardless of Moses's seizure of funds from the bank account.  <u>Id.</u> at 10–11.  This argument is easily disposed of as it assumes that the restraining order could never have been lifted.  N.Y. C.P.L.R. § 5222(b), however, specifically provides that a restraining notice can be vacated "pursuant to an order of the court."  N.Y. C.P.L.R. § 5222(b).  Indeed, in this case the restraint was actually vacated by court order — specifically, the May 12 Order.  Moses argues that Okyere still would not have received the money back from the bank

because Okyere never informed either the bank or Moses about the court's order.  Moses Reply

at 4–5.  But, according to the complaint, Moses was already aware of the court order.  Compl.

¶ 27.  And inasmuch as Okyere has alleged that Moses obtained possession of Okyere's funds,

Okyere was deprived of the opportunity to seek the funds back from the bank.  In the end,

Moses's assumptions about what Okyere would have done to inform his bank of the court's

orders had Moses not violated the April 25 Order amounts to irrelevant speculation.

Finally, Moses argues that Okyere has failed to state a claim for conversion.  "A

conversion takes place when someone, intentionally and without authority, assumes or exercises

control over personal property belonging to someone else, interfering with that person's right of

possession."  Colavito v. N.Y. Organ Donor Network, Inc., 8 N.Y.3d 43, 49–50 (2006).  To

make out a claim for conversion, a plaintiff must show "(1) 'plaintiff's possessory right or

interest in the property' and (2) 'defendant's dominion over the property or interference with it,

in derogation of plaintiff's rights.'"  Yadav v. Punj, 2013 WL 3975943, at *6 (quoting Colavito,

8 N.Y.3d at 50 (2006)) (citing Lynch v. City of N.Y., 965 N.Y.S.2d 441, 446 (1st Dep't 2013)).

"Where possession of property is initially lawful, conversion occurs when there is a refusal to

return the property upon demand."  Salatino v. Salatino, 64 A.D.3d 923, 925 (3d Dep't 2009).

Moses argues that the complaint fails to show that Moses acted intentionally because the

computer records attached to the complaint do not show that Moses was aware of the April 25

court order when he seized the funds.  Moses Mem. at 12–14; Moses Reply at 5–6; Moses Supp.

Mem. at 2.  The computer records, however, are unclear, and thus do not in any way contradict

the allegation in the complaint that Moses contacted Okyere's bank to request a payout after

receiving the April 25 Order.  Compl. ¶ 27.  On a motion to dismiss, the Court is obliged to take

the allegations of the nonmoving party as true, and Okyere has alleged that Moses was aware of

17

the April 25 court order when he obtained his funds.   Compl. ¶¶ 26–27.  The allegation that

Moses took possession of the money despite being aware of the court order staying all

enforcement proceedings is more than sufficient to allow the reasonable inference that Moses

took the money despite knowing that he was prohibited from doing so.  Thus, Moses's motion to

dismiss is denied.

To the extent Moses is arguing that plaintiff has not stated a claim for conversion because

the funds were returned to him six months after they were taken, that argument is also rejected.

As one case has noted:

> Returning property to the rightful owner . . . does not absolve defendants of all
> liability from the alleged conversion.  A claim for conversion will exist even
> when the deprivation is partial or temporary.  Pierpoint v. Farnum, 234 A.D. 205,
> 254 N.Y.S. 758, 763 (2d Dep't 1931).  For the property returned to plaintiff,
> defendants will be liable for the damages, if any, resulting at the time of the
> conversion.  See Silverstein v. Marine Midland Trust Co. of N.Y., 1 A.D.2d 1037,
> 152 N.Y.S.2d 30, 32 (2d Dep't 1956) (noting that the "sole measure of damages .
> . . is the loss flowing from the wrongful withholding of possession"); see also
> Toshoku Am., Inc. v. Rhoda Lee, Inc., 212 A.D.2d 455, 622 N.Y.S.2d 943, 944
> (1st Dep't 1995) (finding that damages were appropriate in a conversion claim for
> the time that the goods at issues were withheld).

Slue v. N.Y. Univ. Med. Ctr., 409 F. Supp. 2d 349, 364 (S.D.N.Y.), reconsideration denied, 2006

WL 212294 (S.D.N.Y. Jan. 26, 2006).

### 2.   Okyere's Claim for Conversion Against the Houslanger Defendants

The Houslanger defendants argue that Okyere's claim against them for conversion must

fail because (1) any restraint of money was authorized, and (2) they were unaware of the

existence of the court's order prohibiting the seizure of Okyere's money because Okyere failed

to serve them with the order in accordance with N.Y. C.P.L.R. § 2220.  Houslanger Mem. at

12–15; Houslanger Reply at 1–3.

As discussed above, Okyere has alleged that Moses's seizure of his money occurred after

18

Moses had received the court's April 25 Order vacating the restraint before he withdrew money from the account and therefore that the taking of Okeyere's money was in violation of a court order.  Accordingly, because Okyere has alleged that the seizure of money was unauthorized, this aspect of the Houslanger defendants' argument is rejected.   The Court notes further that even if the initial taking of the money was authorized, the complaint alleges that the Houslanger defendants deliberately refused for many months to comply with a written demand to return the money, instead instructing Moses to continue holding Okeyere's money.  See Compl. ¶¶ 50, 53, 58.

We also reject the argument that the Houslanger defendants cannot be held liable because the complaint does not allege that service of the order was made in accordance with N.Y. C.P.L.R. § 2220.   First, Okyere has alleged that the Houslanger defendants indeed had possession of the order, as they would have been unable to file an opposition to the order to show cause on May 4, 2011, without being aware of it.  Compl. ¶¶ 33, 43.   Okyere has also alleged that the Houslanger defendants were present at the May 12, 2011 hearing and "had possession that day of the Court's order to return the money."  Compl. ¶ 43.  "In the event the parties or counsel are personally present at the time of a ruling or order they are not only on notice of it, but, in many instances, bound by its provisions."  Raes Pharmacy, Inc. v. Perales, 586 N.Y.S.2d 579, 581 (1st Dep't 1992); accord Ensley v. Snapper, 62 A.D.3d 403, 403 (1st Dep't 2009).  Additionally, because the Houslanger defendants' liability is predicated on Moses's taking of the funds in violation of the court order, their own receipt of the order is not relevant.  For these reasons, the Houslanger defendants' motion to dismiss the conversion claim is denied.

3.     Okyere's Claim Against Palisades for Conversion

Palisades has submitted a nearly identical brief to the Houslanger defendants on the issue of conversion.  Palisades Mem. at 2–17.  For the above reasons, their arguments on this point are rejected.  The only additional argument Palisades makes is that Okeyere has "proffered no evidence of Palisades [sic] control over the Houslanger Defendants generally or as to Plaintiff specifically."  Palisades Reply at 2.  This argument is rejected as plaintiff is not required to present "evidence" in response to a motion to dismiss.  Plaintiff has alleged that the money was held by Moses "for the benefit" of Palisades, Compl. ¶ 48; that Palisades exercised dominion and control over the money, id., and that in-house counsel for Palisades was involved in the state court lawsuit, id. ¶ 54.  These allegations are sufficient to allow the inference that Palisades exercised control over plaintiff's property.  Accordingly, Palisades's motion to dismiss Okyere's conversion claim is denied.

4.     Damages for Conversion Claim

All defendants allege that Okyere's claim for punitive damages fails to "state a claim" for punitive damages because such damages "are not available in the absence of malice and intent." Moses Reply at 8; accord Moses Mem. at 15–18; Moses Supp. Mem. at 2; Houslanger Mem. at 15–17; Houslanger Reply at 3–5; Palisades Mem. at 15–17; Palisades Reply at 6–8.  As we have previously held, however, "[a] motion to dismiss is addressed to a 'claim' — not to a form of damages."  Amusement Indus., Inc. v. Stern, 693 F. Supp. 2d 301, 318 (S.D.N.Y. 2010) (citation and internal quotation marks omitted).  Because there is "no independent cause of action for punitive damages under New York law," Innovative Networks, Inc. v. Satellite Airlines Ticketing Ctrs., Inc., 871 F. Supp. 709, 731–32 (S.D.N.Y. 1995) (citation omitted), we deny defendant's motion to "dismiss" plaintiff's request for punitive damages as procedurally

premature.  See, e.g., Denton v. McKee,  332 F. Supp. 2d 659, 667 (S.D.N.Y. 2004) (denying

motion to dismiss as premature "to the extent it seeks to preclude certain categories of

damages").  For the same reason, we reject as premature Moses's effort to seek dismissal based

on his arguments regarding emotional distress damages.  Moses Mem. at 15–17.  We note

further that Okeyere's complaint does not even specify emotional distress as a category of

damages.

III.   CONCLUSION

   For the foregoing reasons, defendants' motions to dismiss Okyere's section 1692f claim

and his state law conversion claims (Docket ## 27, 35, 53) are denied.

Dated: September 16, 2013
   New York, New York

<br>

GABRIEL W. GORENSTEIN
United States Magistrate Judge